IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NABIL BELAFKIH,

                                                    ORDER

                 Petitioner,

                                                07-C-526-C

      v.

U.S. DHS - IMMIGRATION AND
CUSTOM ENFORCEMENT, Immigration
and Health Services Director KARYN LANG,
DODGE COUNTY DETENTION FACILITY and
D-C-D-F MEDICAL DEPT - DIRECTORS -
PHYSICIAN AND STAFF,

                 Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This case was closed on November 28, 2007 for petitioner's failure to prosecute the case. Now, the court has received a letter from petitioner, which I construe as a motion to reopen the case. The motion will be denied.

      Petitioner's proposed complaint relates to vision problems he experienced while he was detained at the Dodge County Detention Facility in 2005 and 2006. When he filed his proposed complaint, he included a request to proceed in forma pauperis under 28 U.S.C. § 1915.

1

In an order dated October 16, 2007, I stayed a decision on petitioner's request for two reasons. First, it was not clear from petitioner's affidavit of indigency whether he qualified to proceed in forma pauperis. Petitioner said that he has no income and no assets, but he failed to indicate how he pays for his basic needs of housing, food and clothing or the basic needs of his dependent six-year-old daughter.

Second, it was not clear how petitioner planned to prosecute this lawsuit. Petitioner is currently living in Morocco as a result of a deportation order. I noted the many difficulties he would face in bringing his case to a resolution because he was living in another country and prohibited from entering the United States for at least five years. 8 C.F.R. § 212.2.

Accordingly, I directed petitioner to do two things: (1) submit an affidavit of indigency showing how he pays for his basic necessities, such as food, clothing and shelter; and (2) explain how he intended to prosecute his case from Morocco. I informed petitioner that I would dismiss the case if he did not respond to the order by November 12, 2007. When petitioner failed to respond, I directed the clerk of court to close the case.

On December 11, the court received what I am construing as petitioner's motion to reopen the case. In that motion, petitioner explains that he has no income, but that he is living with his parents. Although he does not say so directly, I infer that petitioner's parents pay his basic living expenses.

Petitioner failed to explain in his motion how he can prosecute his case from

Morocco. He asks that the court "allow [him] to come back to the United States" for the purpose of litigating his case, but that is beyond the court's authority. His failure to respond to the court's order for two months demonstrates that he is unable to litigate his case in a timely manner.

Alternatively, petitioner asks for appointment of counsel. Under 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." However, litigants in civil cases do not have a constitutional right to a lawyer; district courts have discretion to determine whether appointment of counsel is appropriate in a particular case. Pruitt v. Mote, 503 F.3d 647, 654, 656 (7th Cir. 2007).

As an initial matter, petitioner could not seek appointment of counsel from the court until he showed that he had attempted to obtain a lawyer on his own. Id. at 654. Petitioner has not informed the court of any efforts he has made in that regard.

Even if petitioner had tried to get a lawyer and failed, I would conclude that this is not an appropriate case for appointment of counsel. Even with a lawyer, it would be next to impossible for petitioner to litigate his case. Although a lawyer might resolve the problem of untimely filings, appointment of counsel cannot resolve the problem that petitioner is prohibited from reentering the country. This means that he cannot sit for a deposition in the United States and he cannot attend trial here.

Further, petitioner may be surprised to learn that lawyers who accept appointments

3

under § 1915(e)(1) receive no compensation from the government.  Rather, they must pay out of pocket all of the expenses they incur as a result of their representation.  In this case, the costs to a lawyer representing petitioner would likely be greater than usual, in terms of both time and money.  Any lawyer wishing to meet with petitioner would have to fly to Morocco to do so.  Petitioner suggests that he might communicate with counsel and others through video conferencing, but petitioner does not suggest that he has the necessary equipment to accomplish this.  (If he did, it would call into question his statement of indigency.)  Correspondence by mail would present difficulties given the length of time required for mail to travel between countries.  It is not clear whether petitioner has access to a computer.  Even obtaining discovery from petitioner would likely become a much more difficult ordeal.  Under these circumstances, it would be unfair to expect a lawyer to represent petitioner under § 1915(e)(1).

In his motion, petitioner says that he believes the Constitution should "protect all the people."  Petitioner should know that the order dismissing his case was not related to the scope of the Constitution, but simply to his ability to prosecute his case.  This is not a suit in which public officials took advantage of petitioner's status by engaging in a series of unconstitutional acts just before he was deported. According to petitioner's own allegations, respondents' alleged mistreatment of him began in 2005.  He does not explain why he failed to file a lawsuit while he was still in the United States but instead waited until after he was

4

deported (almost two years later) to challenge any mistreatment that he received.

Finally, petitioner challenges the government's right to "illegally detain . . . and deport a lawful permanent resident." However, petitioner's proposed case is not related to the propriety of his detention or deportation. If petitioner believes his deportation was unlawful, his remedy lies with the Department of Homeland Security, not this court.

## ORDER

Petitioner Nabil Belafkih's motion to reopen the case is DENIED.

Entered this 19th day of December, 2007.

> BY THE COURT:
> /s/
> BARBARA B. CRABB
> District Judge